| | | |
|---|---|---|
| UNITED STATES BANKRUPTCYCOURT<br>SOUTHERN DISTRICT OF NEW YORK | | **FOR PUBLICATION** |
| ------------------------------------------------------------X | | |
| In re:<br><br>   Lynn Lord,<br><br>                              Debtor. | :<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 13<br><br>Case No. 05-30066 (cgm) |
| ------------------------------------------------------------X | | |
| In re:<br><br>   Lisa Stallings,<br><br>                              Debtor. | :<br>:<br>:<br>:<br>:<br>:<br>: | Chapter 13<br><br>Case No. 05-30090 (cgm) |
| ------------------------------------------------------------X | | |

**MEMORANDUM DECISION OVERRULING OBJECTIONS
TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY**

**A P P E A R A N C E S :**

Lynn Lord, *pro se*
7 Barnett Road East
Monroe, New York

Brian B. Kumiega
Steven J. Baum, P.C.
220 Northpointe Parkway, Suite G
Amherst, New York
*For Citifinancial Mortgage Company*

Lisa Stallings, *pro se*
17 Mechanic Street
Port Jervis, New York

Eric S. Sheidlower
Stein & Sheidlower, LLP
One Old Country Road
Suite 113
Carle Place, New York
*For Charter One Bank, N.A.*

## CECELIA G. MORRIS
## UNITED STATES BANKRUPTCY JUDGE

In recent months, this Court has received a rash of similar *pro-se* pleadings from apparently unrelated debtors. Normally received in opposition to either a secured creditor's motion for relief from the automatic stay for non-payment of mortgage arrears or the chapter 13 trustee's motion to dismiss the case, these objections have several things in common:

- The objections rarely, if ever, address the specific allegations contained in the motion. The objections normally altogether ignore crucial allegations such as failure to make post-petition mortgage payments.
- The objections contain many irrelevant and false or inaccurate factual and legal arguments.
- The objections contain numerous identical sentences or paragraphs (sometimes including the same typographical errors), and the copied statements are usually combative and hysterical in tone.
- The objections contain unfounded accusations against the Court or the movant and/or movant's counsel. For example, the Court has been accused of "rubber stamping" broad, vague and unconstitutional orders; and counsel have been accused of lying and deserving to be sanctioned. The facts upon which these accusations are founded are rarely provided, or else are demonstrably false.
- Finally, having submitted these objections, none of the debtors have appeared in court at their scheduled hearings.

The Court has come to refer to these types of pleadings as "copycat" or "Internet-compiled" pleadings, because the debtors do not appear to understand their own request for relief, much of which is both factually and legally inapplicable to their cases. Rather than a coherent response to the allegations set forth in the motion, these pleadings are more like a collection of spurious objections or an intentional attempt at disinformation and delay.

*In re Diane Keefer*, No. 04-30304, slip op. (Bankr. S.D.N.Y., February 10, 2005) (ECF Docket No. 8), Judge Burton R. Lifland[1] overruled similar objections contained in that debtor's opposition to relief from the automatic stay. By addressing two additional "Internet-compiled" objections, this decision is a further attempt to address the problems created by these objections and bring attention to what this Court identifies as a pattern of abuse of the bankruptcy system.

## BACKGROUND FACTS

During separate hearings on May 17, 2005, the Court granted motions by (1) Citifinancial Mortgage Company ("Citifinancial"), terminating the stay in the case of Lynn Lord (05-30066) with prejudice and also awarding *in rem* relief; and (2) Charter One Bank, National Association ("Charter One"), terminating the stay in the case of Lisa Stallings (05-30090) with prejudice, but denying the request for *in rem* relief. In both cases, the Court denied the movant's request for waiver of the 10-day stay contained in Fed. R. Bankr. P. 4001(a)(3). Before turning to the specifics of each lift-stay motion and the opposition thereto, the Court will set forth a few common background facts.

Both debtors filed skeletal petitions (missing all schedules, the statement of financial affairs and the chapter 13 plan) and listed a single secured creditor in the creditor matrix. Lord filed her petition on March 8, 2005 and listed Citifinancial in her creditor matrix; Stallings filed on March 28, 2005 and listed only Charter One. Both debtors signed page two of the petition, swearing under penalty of perjury that the information provided was true and correct; yet neither debtor listed any "Prior Bankruptcy Case Filed Within Last 6 Years" on the second page of the petition. Lord filed a prior, joint chapter 13 case with Robert Lord on January 30, 2001 (Case No. 01-

---

[1] Sitting in the Poughkeepsie Division.

- 3 -

35188); Stallings has filed four prior chapter 13 cases (Case No. 02-30180, filed March 19, 2003 and dismissed June 10, 2003; Case No. 02-30131, filed June 9, 2003 and dismissed July 31, 2003; Case No. 03-30251, filed October 14, 2003 and dismissed July 13, 2004; and Case No. 04-30234, filed September 27, 2004 and dismissed January 5, 2005).

After the chapter 13 trustee moved to dismiss the cases, both debtors untimely filed their schedules, statement of financial affairs, and chapter 13 plan. Both debtors listed a single creditor, which was the same secured creditor listed on the creditor matrix. In her chapter 13 plan, Lord acknowledges pre-petition mortgage arrears of $60,000 to Citifinancial and proposed to repay the arrears (with 1% interest) through 60 monthly payments of $1,000, in addition to regular monthly payments outside the plan of $1,200. Stallings' chapter 13 plan acknowledges pre-petition mortgage arrears of $21,000 to Charter One and proposed to repay the arrears (with 1% interest) through 60 monthly payments of $300 (a total of only $18,000), in addition to regular monthly payments outside the plan of $980.

In the afternoon of May 17, 2005, the Court granted the chapter 13 trustee's motions to dismiss both cases for failure to make plan payments and failure to provide requested documentation to the chapter 13 trustee. In addition, Lord's case was dismissed due to her failure to appear and be examined at the meeting of creditors required by 11 U.S.C. § 341.[2]

**Lynn Lord**

According to Schedule A to Lord's petition, she owns a one-family home at 7 Barnett Road in Monroe, New York. The home is valued in Lord's petition at $340,000

---

[2] Stallings' case was dismissed prior to the meeting of creditors scheduled in her case.

- 4 -

and subject to the lien of Citifinancial. Lord acknowledges Citifinancial's "1987 First Mortgage" in the amount of $220,000 in Schedule D to her petition, and she does not contend that the debt is contingent, liquidated or disputed.

On April 19, 2005, Citifinancial moved for relief from the automatic stay, claiming that relief was justified due to Lord's failure to make contractual mortgage payments post-petition, and that non-payment constitutes "cause" to lift the stay under 11 U.S.C. § 362(d)(1). Citifinancial also alleges that "the mortgage loan is contractually due for the October 3, 2001 monthly mortgage payment." Application of Citifinancial, ¶12 (ECF Docket No. 6). Citifinancial also claims that it has been forced to pay real estate taxes and hazard insurance on the real property that has not been paid by the Debtor. Citifinancial also filed a proof of claim in Lord's case on March 21, 2005, showing pre-petition arrears of $119,382.05, including 42 months of unpaid principal and interest payments totaling $48,788.76. Desiring to commence foreclosure proceedings, Citifinancial requested relief from the automatic stay with prejudice for 180 days, including *in rem* relief and waiver of the 10-day stay in Fed. R. Bankr. P. 4001(a)(3).

Lord's unsworn and unsigned objection is captioned "OBJECTION & CERTIFICATION TO STRIKE ALL CREDITOR'S MOTIONS FOR RELIEF AS TOO BROAD, TOO VAGUE, and AGAINST THE 14TH AMENDMENT AS TO UNKNOWN, UNSERVED DEBTORS and ASSIGNS, WHO ARE UNREPRESTED [SIC] AND WE [SIC] DO NOT KNOW WHO THEY ARE." (ECF Docket No. 15; hereafter, the "Lord Opp.") The opposition begins with the following statement:

> As a nation, we pay a great deal of lip service to the phrase "Equal Justice Under Law". It is an ideal engraved over the entrance to the Supreme Court. Most people, however, like the alleged creditor's lawyer, have not been to the Supreme Court. All too often, what they "know

> about justice" and "due process" is what is played out around them daily
> in Federal Court when Federal Judge's [sic] "rubber-stamp" broad, vague,
> unconstitutional perspective [sic] relief orders against other unknown,
> unnoticed, unrepresented debtors, and what is seen daily is against this
> ideal and corrupts the integrity of our constitutional system of laws.

Lord Opp., unnumbered page 1 (quotations not attributed in original).

After Judge Lifland's decision lifting the stay in *Keefer*, Keefer filed a "NOTICE OF MOTION and CERTIFICATION TO RECONSIDER and TO STRIKE ALL CREDITOR'S MOTIONS FOR RELIEF GRANTED BY THIS COURT AS TOO BROAD, TOO VAGUE, & AGAINST THE 14TH AMENDMENT AS TO OTHER FUTURE DEBTORS & ASSIGNS, OR TO CREDITORS AND ASSIGNS, SINCE WE [SIC] DO NOT KNOW WHO THEY ARE and ALLOW DEBTOR HER CHAPTER 13 CASE WITHOUT DISMISSAL SINCE CREDITOR HAS FAILED TO FILE A PROOF OF CLAIM" (No. 04-30304, ECF Docket No. 11; hereafter, the "Keefer Reconsideration"[3]). The Keefer Reconsideration also opens with the identical statement:

> As a nation, we pay a great deal of lip service to the phrase "Equal Justice
> Under Law". It is an ideal engraved over the entrance to the Supreme
> Court. Most people, however, like the alleged creditor's lawyer, have not
> been to the Supreme Court. All to often, what they "know about justice"
> and "due process" is what is played out around them daily in Federal
> Court when Federal Judge's [sic] "rubber-stamp" broad, vague,
> unconstitutional perspective [sic] relief orders against other unknown,
> unnoticed, unrepresented debtors, and what is seen daily is against this
> ideal and corrupts the integrity of our constitutional system of laws.

Keefer Reconsideration, unnumbered page 2 (quotations not attributed in original).

Lord next accuses Citifinancial's counsel of making: "outlandish, slanders [sic], dishonest, false statements in his certification against me and although the alleged creditor's lawyer is taking my 'first filing' which does not constitute 'bad faith' as too

---

[3]    The Keefer Reconsideration was denied by this Court by memorandum endorsement dated March 15, 2005 (ECF Docket No. 13).

- 6 -

personal, I can certainly appreciate the frustration of the creditor's lawyer." Lord Opp., ¶ 3 (quotations not attributed in original). The identical sentence was contained in unnumbered pages 3 and 4 of the Keefer Reconsideration. Lord protests that this is her first filing and that "[a]ll filings have been in 'good faith'; however, creditor does not act in good faith in accepting my proposals and plans for effective reorganization of debts as allowed under H.U.D. Code and regulation. Lord Opp., ¶ 3 (citations omitted[4]). Again, this statement and the statutory citations were quoted verbatim in the Keefer Reconsideration, ¶ 3. Lord also apparently objects to the request for *in rem* relief which could bind others with an interest in the property because:

> I do not control their actions any more than I control the sun coming up in the morning or going down in the night. My name is the only one on this petition and the creditor, or the court, does not have jurisdiction over other unrepresent [sic] debtors until they file a bankruptcy petition as per the 14th Amendment.

Lord Opp., ¶4. The Keefer Reconsideration contains the same phrases and typos, word-for-word, in paragraph 4 to her motion. Lord also protests that "the alleged creditor must file a Proof of Claim, under oath, otherwise, the alleged creditor does not have standing or any right to be granted relief . . . ." Lord also claims that Citifinancial:

> does not own, hold, or possess a copy of the original mortgage contract because the alleged creditor is "merely only a servicer of the laon" [sic] and is not the "true owner, holder or possessor" in due course of the original mortgage contract and my contract states that, only the "true owner of the original note can collect payments"

Lord Opp., ¶7 (quotations not attributed in original). The Keefer Reconsideration includes the same statement at ¶7, including the same misspelling of the word "loan." Lord also objects that "the only evidence against me is the bank's lawyers [sic]

---

[4] Debtor refers to 44 U.S.C. §§ 1507 and 1510, which deal with publication and codification of certain documents (e.g., proclamations and executive orders and documents required to be published by Congress) in the Federal Register.

statements 'not under oath'." Lord Opp., ¶11; *compare* the identical language in the Keefer Reconsideration, ¶11. Lord also claims that Citifinancial has failed to provide the notice required by the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 et seq. and claims that the "creditor has not followed all the legally binding H.U.D. regulation concerning servicing of such mortgage and these actions alone would bar the creditor by principle of fair play and unclean hands doctrine from gaining relief sought." Lord Opp., ¶18. Keefer made identical claims at paragraph 18 of the Keefer Reconsideration. Lord's opposition concludes:

> This action by the Creditor is totally unfair, premature and biased against a Debtor and is void of any elements of "justice and equal treatment"; this Debtor's only sin is to file a petition to protect his only house, and property, while the Creditor has "overcharged" me, and my family. Creditor has failed to accept monthly payments in the past; Creditor has failed to talk, or to settle all of the issues of dispute to the present time as required under H.U.D. Regulations.

Lord Opp., unnumbered page 8 (quotations not attributed in original). The Keefer Reconsideration contains the identical statement at unnumbered page 10.

Aside from the fact that Lord has failed to document any of her allegations, Lord makes several statements that are obviously false, based on a simple review of the docket sheet:

- In spite of her many protests that the instant case is her only filing and "only sin," Lord filed a joint petition in 2001 with Robert Lord, the other obligor on the note and mortgage. Robert Lord filed four additional chapter 13 petitions in 2003 and 2004, with the last case being dismissed with prejudice for one year on January 21, 2005.
- Lord claims that Citifinancial is without standing to seek relief from the stay until it has filed a proof of claim. Keefer's opposition to the lift-stay motion claimed: "This Court lacks subject matter jurisdiction until there is a proper Proof of Claim filed by a true creditor who 'owns, holds, or possesses the original mortgage note with my original signature on it'." No. 04-30304, Docket No. 7 at 2. As discussed below, nothing in the Bankruptcy Code requires a secured creditor to file a proof of claim before it can request relief from the automatic stay. However, Lord is incorrect for another reason:

- 8 -

    Citifinancial <u>did</u> file a proof of claim prior to seeking relief from the automatic stay.

- The Debtor claims that Citifinancial has not submitted statements under oath and has no evidence against her. As part of its motion for relief from stay, Citifinancial filed a sworn affidavit from an officer who claims to have personal knowledge of the facts, plus copies of the note and mortgage. It must also be noted that Lord's own opposition is unsworn, entirely undocumented, and actually admits many of the allegations made by Citifinancial. Also, Lord's petition and schedules (which she has sworn are true and correct) acknowledge Citifinancial as a secured creditor. Moreover, in Lord's opposition to relief from stay by Citifinancial in Lord's prior bankruptcy case, the debtors stated that they "admit to the Citifinancial Mortgage Company having a first lien upon the premises known as an by [sic] 7 Barnett Road East, Monroe, New York, 10950, which premises comprise the principal residence of the Debtors." *See* "Attorneys Affirmation in Oppossition [sic] to the Motion for Relief of the Stay," Case No. 01-35188 (ECF Docket No. 7).

- Although Lord protests that Citifinancial "is 'merely only a servicer of the laon' [sic] in due course of the original mortgage contract . . .", Debtor acknowledges Citifinancial as a secured creditor with an interest in her real property on Schedule D to the petition.

- Lord also claims: "my contract states that, only the 'true owner of the original note can collect payments'." The Court has reviewed and read the note and mortgage submitted as exhibits to Citifinancial's motion for relief from the stay, and no such provision is contained therein.

- Finally, although Lord asserts at numerous places that the loan is guaranteed by the United States Department of Housing and Urban Development, there is no such indication in the loan documents provided by Citifinancial, and Debtor has not listed H.U.D. as a co-debtor or guarantor in Schedule H to her petition. In the *Keefer* case, the debtor also insinuated that the mortgagee "must comply with legally binding HUD laws and regulations as to information concerning servicing of such mortgages, or lenders would be barred by principles of fair play and by unclean hands doctrine from gaining relief sought . . . ." No. 04-30304, Docket No. 7 at 7. Compare Lord's statement, that failure to comply with H.U.D. regulations "would bar the creditor by principle of fair play and unclean hands doctrine from gaining relief sought". Lord Opp., ¶18.

Although Lord claims that "there is more than enough equity in the property to protect the creditor and the creditor knows that the loan is guaranteed under H.U.D.," the fact that equity exists in the property does not relieve a debtor of the obligation to make contractual mortgage payments to a secured creditor. *See, e.g., In re Balco Equities, Ltd.,*

312 B.R. 734, 753 (Bankr. S.D.N.Y. 2004) (equity cushion does not provide adequate protection where debtor does not demonstrate a sincere desire to reorganize). Lord never disputes – and therefore admits – Citifinancial's main allegation, which is that Lord has failed to make post-petition mortgage payments and has failed to make any mortgage payments for nearly four years. Lord never offers to make adequate protection payments. In her opposition, at paragraph 16, Lord states that "under the code I can hold my payments in escrow as allowed by law until a Proof of Claim under oath is filed to determine a 'legal' Creditor with standing." The identical legal argument is also made in paragraph 16 of the Keefer Reconsideration. Lord does not claim or provide any documentation that she has escrowed such payments. Her assertion that the Bankruptcy Code permits a debtor to escrow payments until a proof of claim has been filed is pure fantasy – no such provision exists. To the contrary, Bankruptcy Code Sections 361, 362 and 363 require a debtor to provide adequate protection to secured creditors.

Lord did not appear at the hearing scheduled to consider relief from the automatic stay. After considering Citifinancial's motion and determining that Citifinancial had made a *prima facie* case, the Court overruled Lord's opposition and determined that "cause" existed to grant relief from the automatic stay. Bankruptcy Code Section 362(d) states in relevant part that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

Moreover, Section 362(g) states:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

    (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

    (2) the party opposing such relief has the burden of proof on all other issues.

Citifinancial has demonstrated cause for relief from the automatic stay, based upon the undisputed allegation that Lord is not making post-petition mortgage payments. The Court is also persuaded that Citifinancial is not adequately protected based upon the fact that Lord has not made a mortgage payment to Citifinancial since 2001, combined with the fact that Citifinancial is forced to advance its own funds to pay taxes and property insurance.

The Court must now consider Citifinancial's request for relief from stay with prejudice, and for *in rem* relief. Granting relief from the automatic stay "with prejudice" is an award of prospective relief only as to the debtor in the event that the debtor refiles within the prescribed period of time. By contrast, *in rem* relief is prospective relief that will apply to others who may file a petition and invoke the automatic stay as to the same real property.

First, based upon the history between Lynn Lord and Citifinancial, including the debtor's conduct in this case, relief from the stay with prejudice is appropriate. Lord has provided no evidence of an intention to reorganize or cure the arrears owed to Citifinancial. The Debtor's entire case is a transparent attempt to delay foreclosure proceedings, with no corresponding willingness to rehabilitate, and this is the very essence of bad faith and abuse of the bankruptcy system. Lord's bad faith is underscored by her apparently thoughtless submission of irrelevant and baseless pleadings that were

copied or compiled from other oppositions, leveling serious accusations and legal arguments that are inapplicable and entirely false.

Whether or not to grant relief *in rem* requires a separate, and broader analysis than the decision to grant relief with prejudice. An *in rem* order is issued in "...response to serial bankruptcy filings involving more than one debtor with a common interest in property that they seek to protect from state law foreclosure." *See In re Graham*, 1998 WL 473051 at *2 (Bankr. E.D. Pa. Aug. 3, 1998). The issuance of an *in rem* order raises due process concerns, as the bankruptcy court's determination will implicate the rights of non-debtor third parties.

> An Order affecting a non-debtor's interest in certain property may be validly entered if the Court has personal jurisdiction over the non-debtor or *in rem* jurisdiction (subject matter jurisdiction) over the property...Courts have consistently found that *in rem* jurisdiction obtains where a debtor shares a common ownership interest with the non-debtor in the real property, such that the property becomes property of the estate under Section 541 of the Code. By virtue of this *in rem* jurisdiction, courts have lifted the stay prospectively as to any future bankruptcy filing by the debtor or any other party with an interest in the real property in order to prevent abusive filings by co-owners intended solely to delay foreclosure on commonly held property.

*In re Feldman*, 309 B.R. 422, 428 (Bankr. E.D.N.Y. 2004)(citations omitted); *see also In re Price*, 304 B.R. 769, 773 (Bankr. N.D. Ohio 2004); *In re Roeben*, 294 B.R. 840, 846 (Bankr. E.D. Ark. 2003); *In re Graham*, *supra* at *2. Before granting *in rem* relief, the Court must scrutinize the record and determine that an abuse of the bankruptcy process has occurred, through multiple filings made with the sole intention of frustrating legitimate efforts of secured creditors to recover their collateral. *In re Price*, *supra*, at 773 (*in rem* relief appropriate where Debtor and her husband had filed six successive bankruptcy cases for the sole purpose of delaying foreclosure sale); *In re Roeben*, *supra*

at 847 (*in rem* is extraordinary relief appropriate where an abuse of the bankruptcy process had occurred; Debtor and spouse had filed six successive proceedings to forestall foreclosure and thus *in rem* relief was warranted); *In re Graham, supra*, at *2 (record must demonstrate a clear pattern of an abuse of the bankruptcy process through multiple filings with the sole purpose of frustrating the legitimate efforts of creditors to recover their collateral). In this case, the record demonstrates a clear pattern of tag-team filing. Lynn Lord and Robert Lord filed a joint chapter 13 petition in 2001; thereafter Robert Lord filed four petitions. Lynn Lord filed this petition less than six weeks after Robert Lord was barred from further filings. Taken together, these filings demonstrate an attempt by multiple, related debtors to abuse the bankruptcy process and frustrate the legitimate efforts of the mortgagee. Under the circumstances, *in rem* relief is necessary in order to remedy this systematic abuse.

### Lisa Stallings

In Schedule A to her petition, Stallings claims that she is the owner of real property located in Port Jervis, New York. In Schedule D to her petition, Stallings acknowledges that her real property is subject to a "first mortgage" dated July 14, 2000, in the amount of $69,000, which is held by Charter One. Charter One filed a proof of claim dated April 22, 2005 which states that the "Principal Amount due at Default" is $69,228.17, including total pre-petition arrears of $43,341.82. Thus, comparing the Debtor's sworn schedules and Charter One's proof of claim, there appears to be no dispute that Charter One holds a security interest in Stallings' real property by virtue of a

first mortgage in favor of Charter One. Moreover, Stallings and Charter One appear to be substantially in agreement as to the amount of the mortgage.

Charter One moved for relief from the automatic stay on April 22, 2005, claiming that Stallings failed to make her May 2005 post-petition mortgage payment in the amount of $1,074.82. Charter One also sought relief from the stay with prejudice, *in rem* relief, and waiver of the 10-day stay in Bankruptcy Rule 4001(a)(3). To support its claim for relief, Charter One alleged the following:

- Stallings has failed to make any mortgage payments since August 2001.
- Charter One commenced a foreclosure action in state court in January 2002 and obtained a judgment of foreclosure and sale against Stallings' property on June 12, 2002.
- A foreclosure sale was scheduled on August 29, 2002; however, Stallings stayed the foreclosure sale by filing a chapter 13 petition (Case No. 02-30180) on August 27, 2002. This first petition was dismissed on March 18, 2003.
- A second foreclosure sale was scheduled for June 10, 2003; however, Stallings stayed the sale by filing a second chapter 13 petition (Case No. 03-30131) on January 9, 2003. The second petition was dismissed on July 31, 2003.
- A third foreclosure sale was scheduled for October 14, 2003; however, Stallings stayed the sale by filing a third chapter 13 petition (Case No. 03-30251) on the day of the scheduled sale. The third petition was dismissed on July 13, 2004.
- A fourth foreclosure sale was scheduled for September 28, 2004; however, Stallings stayed the sale by filing a fourth chapter 13 petition (Case No. 04-30234). The fourth petition was dismissed on January 5, 2005.
- A fifth foreclosure sale was scheduled for March 29, 2005; however, Stallings stayed the sale with this filing, her fifth in less than three years.
- Charter One has submitted an affidavit executed by one of its bankruptcy specialists, swearing that Stallings "has not made a single mortgage payment to the secured creditor throughout her five (5) Chapter 13 bankruptcy filings." Affidavit of Reba Mescher, ¶26.

In response to Charter One's motion for relief from the stay, on May 13, 2005, Stallings submitted an unsworn and unsigned "OBJECTION TO VACATE THE

05-30066-cgm    Doc 22    Filed 05/24/05    Entered 01/19/06 09:25:39    Main Document
Pg 15 of 19

AUTOMATIC STAY; MOTION TO SCHEDULE A PROOF OF CLAIM HEARING SINCE ALLEGED CREDITOR DOES NOT HAVE STANDING IN COURT; COURT LACKS SUBJECT MATTER JURISDICTION UNTIL THE ORIGINAL MORTGAGE NOTE WITH MY ORIGINAL SIGNATURE IS PRODUCED INTO EVIDENCE and PROOF OF CLAIM IS SIGNED [SIC] ALLEGED CREDITOR'S AGENT AND NOT BY CREDITOR'S LAWYER" (ECF Docket No. 11; hereafter, "Stallings Opp."). Similar opposition was submitted by Keefer to the lift-stay motion in her case and captioned "OBJECTION TO VACATE THE AUTOMATIC STAY and MOTION TO SCHEDULE A PROOF OF CLAIM HEARING SINCE ALLEGED CREDITOR DOES NOT HAVE STANDING IN COURT and THIS COURT LACKS SUBJECT MATTER JURISDICTION UNTIL THE ORIGINAL MORTGAGE NOTE IS PROEUCED INTO EVIDENCE and PROOF OF CLAIM IS SIGNED" (No. 04-30304, ECF Docket No. 7; hereafter, "Keefer Opp.").

As discussed above, Stallings and Charter One are apparently in agreement as to the amount Stallings owes Charter One on the first mortgage. Nevertheless, the crux of Stallings' argument in opposition is that Charter One has no standing to seek relief from the stay because the proof of claim filed by Charter One was not signed under oath, and thus this Court lacks subject matter jurisdiction "until there is a proper Proof of Claim filed by a true creditor who 'owns holds, or possesses the original mortgage note with my original signature on it'." Stallings Op., ¶1 (quotations not attributed in original). Keefer's opposition contained the same word-for-word argument, including the same unattributed quotations in opposition to the motion for relief from stay in that case. Keefer Opp., page 6.

Like the debtor in Keefer, who failed to dispute substantive allegations, Stallings' objection is, with one exception discussed below, "one of standing and subject matter jurisdiction alone". *In re Keefer, supra*, at 6. For example, both Stallings and Keefer state:

> I want my hearing and I want my day in Court, otherwise, I am being denid [sic] due process and equal treatment under the law(see the 14the Amend. USCA) [sic]. I am the defendant, therefore I don't have to prove anything under our constitutional system of laws, but the alleged plaintiff, creditor, or movant has to prove everything to the satisfaction of this Court and to me.

Stallings Op., ¶5; Keefer Opp., ¶5. Judge Lifland rejected Keefer's arguments because, as in this case:

> Debtor filed a bankruptcy petition with Schedule A annexed thereto in which she states, under oath, that she is the owner of the premises. The Court takes judicial notice of Debtor's ownership interest of the premises on that basis. 11 U.S.C. § 541(a)(1) defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case..." 28 U.S.C. § 1334(e) further provides that the district court in which a case under title 11 is commenced or pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of the case. All matters arising under Title 11 have been referred to the bankruptcy court pursuant to the standing order of reference to bankruptcy judges dated July 10, 1984 signed by acting Chief Judge Robert J. Ward. Thus this Court has jurisdiction over the debtor's bankruptcy filing and her property at 6 Old Quaker Hill Road, Monroe, New York pursuant to 28 U.S.C. §§ 1334(a) and (e); 28 U.S.C. § 157(a) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by acting Chief Judge Robert J. Ward. Additionally, motions to terminate, annul or modify the automatic stay are core proceedings under 28 U.S.C. § 157(b)(2)(G). Furthermore, a debtor submits to the bankruptcy court's jurisdiction by filing a petition, *see In re Tornheim*, 181 B.R. 161, 167 (Bankr. S.D.N.Y. 1995), and thus Debtor cannot argue that this Court does not have jurisdiction over the property or her person.

*In re Keefer, supra*, at 6-7. Stallings has, of course, submitted to this Court's jurisdiction with the filing of her petition, and in her petition she has acknowledged under oath that Charter One is a secured creditor holding a first-mortgage on her real property.

It bears repeating that a creditor's right to seek relief from the automatic stay is in no way dependent upon or related to whether or not the creditor has filed or properly executed a proof of claim. Moreover (although its right to relief from stay is in no way contingent on the observation), the Court finds no reason to believe that Charter One's proof of claim does not comply with the requirements of 11 U.S.C. § 501, Bankruptcy Rule 3001, or Official Form 10.

Like Keefer and Lord, Stallings makes the same bogus, undocumented suggestion that Charter One has failed to "comply with legally binding HUD laws and regulations" and that Charter One "would be barred by principles of fair play and by unclean hands doctrine . . . ." Stallings Opp., ¶13; *see also* Keefer Opp., ¶7; Lord Opp., ¶18.

Next, Stallings claims that Charter One's counsel has "commited [sic] a lie and should be sanctioned for his dishonesty," apparently based upon Stallings' own false assertion that "all mortgage loans are guaranteed by the Federal Government either by the Veterans Administration, Federal Housing Administration, or Dept. of Housing & Urban Development." Stallings Opp., ¶3. The most shocking thing about this claim is that in the same paragraph Stallings herself makes a false statement that contradicts a prior statement that Stallings made under oath:

> I do not owe Charter One Bank, any money, debt, nor did I promise to pay them which has my original signature on it.

*Id.* Stallings has of course admitted in her sworn Schedule D that she owes a debt to Charter One.

Like Lord, Stallings failed to appear at the scheduled hearing on the lift-stay motion. Upon finding that Charter One had made a *prima facie* demonstration that "cause" existed for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), the Court lifted the stay.

Although Stallings has argued that she "[doesn't] have to prove anything under our constitutional system of laws, but [Charter One] has to prove everything to the satisfaction of this Court and to me," Stallings Opp., ¶5, that is an incorrect statement of the law. As discussed above, pursuant to Bankruptcy Code Section 362(g), the party opposing relief from the automatic stay has the burden of proof on most issues. Here, Charter One's claim that the Debtor has failed to make post-petition payments was not disputed by Stallings.

The Court also found that relief from the stay with prejudice is warranted in this case as Stallings' serial bankruptcy filings have stayed five foreclosure sales. More seriously, Stallings fails to exhibit any effort to use the Bankruptcy Code to reorganize. Stallings' meritless opposition to the lift-stay motion, containing false statements, is further evidence of bad faith that entitles Charter One to relief from the stay with prejudice.

Although Stallings' individual record of bankruptcy filings is worse than Lord's, *in rem* relief is not appropriate here because no showing was made that the real property at issue has been the subject of a collaborative effort between Stallings and another individual to frustrate Charter One's foreclosure efforts. As such, there is no basis for the Court to enter an order precluding future relief that may be sought by non-debtor third parties.

## Conclusion

The foregoing sets forth the Court's reasoning for granting relief from the stay in the above-captioned cases. Although Lord has suggested this Court is merely "paying lip service" to the United States Constitution and rubber-stamping "broad, vague, unconstitutional perspective [sic] relief orders" it is these two debtors who have rubber-stamped insincere and meaningless opposition without reading or understanding what they have argued.

Dated: Poughkeepsie, New York
      May 24, 2005         /s/ Cecelia Morris
                                        CECELIA G. MORRIS
                                        UNITED STATES BANKRUPTCY JUDGE